IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER J. ARETZ, )
)
        Plaintiff, )
)
        v. ) Civil Action No. 07-239 Erie
)
PLASTIKOS, INC., )
)
        Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

    Presently pending before the Court is the Defendant, Plastikos, Inc.'s Motion for Summary Judgment.

### I. BACKGROUND

    Plaintiff, Peter J. Aretz ("Aretz" or "Plaintiff"), was employed by Defendant, Plastikos, Inc., ("Plastikos" or "Defendant"), a manufacturing company, from January 1, 2004 to March 31, 2006 as a manufacturing manager. Pl. Ex. J, Aretz Dep. p. 16; Def. Ex. D, Mead Dep. p. 37. Plastikos is a custom injection molder of thermal plastic components with its headquarters located in Erie, Pennsylvania and employs between 80 and 90 employees in its sales, engineering and manufacturing departments. Pl. Ex. J, Aretz Dep. p. 17; Pl. Ex. Q, Mead Dep. p. 14. The stock of Plastikos was owned by William Fogleboch ("Fogleboch"), Tim Katen ("Katen") and David Mead ("Mead"). Pl. Ex. Q, Mead Dep. p. 15. Plaintiff was 44 years old at the time he was hired. Pl. Ex. J, Aretz Dep. p. 16. Fogleboch and Katen were 56 years old and Mead was 60 years old. Pl. Ex. J, Aretz Dep. p. 16. Plaintiff reported directly to Fogleboch, who was the General Manager of the plant and responsible for its day-to-day operations, who in turn reported to the other owners, Katen and Mead. Pl. Ex. A, Aretz Dep. p. 18.

    The record reflects that during his tenure, the Plaintiff was involved in several confrontations with other employees. On February 27, 2004, Plaintiff became involved in a shouting match with an employee named Frank Doliver ("Doliver"), the Defendant's maintenance manager. Def. Ex. D, Mead Dep. p. 18. Fogleboch observed the incident and brought it to a stop. Def. Ex. L; Pl. Ex. N, Doliver Dep. p. 48. He memorialized this incident on

1

an Employee Disciplinary Notice form with respect to Plaintiff. Def. Ex. L; Pl. Ex. N. Doliver testified that he and Plaintiff fought several times per week and that he thought about quitting on numerous occasions. Def. Ex. J, Doliver Dep. p. 18. The day before Plaintiff was terminated, Doliver and Plaintiff had another heated exchange which Doliver reported to Katen. Pl. Ex. N. Doliver Dep. pp. 17; 24.

A few months later, the Plaintiff and Mark DeHaven ("DeHaven"), the Defendant's sales manager, became engaged in a conversation which, according to the Plaintiff, was "loud on both parts." Def. Ex. B, Aretz Dep. pp. 43-44. Once again, Fogleboch brought the confrontation to an end and prepared another Employee Disciplinary Notice form dated April 9, 2004 relative to Plaintiff's conduct. Def. Ex. B, Aretz Dep. pp. 43-44; Pl. Ex. A. DeHaven described his relationship with Plaintiff as "strained" at the beginning of Plaintiff's employment and informed Fogleboch on several occasions that if he had to report directly to Plaintiff he would resign. Def. Ex. I, DeHaven Dep. pp. 7; 15. He also advised Katen at one point that Plaintiff was "bringing the morale down of the company." Def. Ex. I, DeHaven Dep. p. 19.

Plaintiff also had confrontations with Dwayne Belden ("Belden"), who described Plaintiff's management style as "my way or the highway." Def. Ex. F, Belden Dep. p. 10; Def. Ex. B, Aretz Dep. P. 45. Belden informed Katen that it was his opinion that the Plaintiff was treating people poorly and that the company had lost a number of employees due to Plaintiff's management style. Def. Ex. F, Belden Dep. pp. 28-29. On at least one occasion in December 2004, Fogleboch counseled Plaintiff with respect to his treatment of Belden and advised him that he was the "root of many of the morale problems at Plastikos" and directed him to "treat everyone as if they were a customer." Pl. Ex. G. Although Plaintiff could not recall the specifics of that particular meeting with Fogleboch, he testified that he had more than one conversation with both Belden and Fogleboch regarding "communication" and acknowledged that he had arguments or altercations with Belden. Def. Ex. B, Aretz Dep. pp. 51-52; Def. Ex. E, Aretz Dep. p. 45. He also conceded that Fogleboch counseled him concerning the proper treatment of employees. Def. Ex. B, Aretz Dep. p. 51.[1]

---

[1] Plaintiff does not deny that he was counseled from time to time. Plaintiff claims, however, that he could not recall certain counseling sessions or directives given to him. For

2

example, Plaintiff testified as follows:

> • • •
>
> ... talked to you about not swearing at employees?
> Did you ever even talk about the subject?
> A. I do not recall. I do not recall ever having a conversation like that.
> Q. How about the same question, instead of swearing, though yelling at employees?
> A. I don't recall a conversation about yelling at employees.
> Q. Did anybody from Plastikos ever tell you that they were issuing you a disciplinary notice for anything you did at Plastikos?
> A. I do not recall.
>
> • • •
>
> Q. Did any of those conversations involve discussions between you and Mr. Fog[le]boch where he indicated that he believed or had been told that you were shouting or yelling at employees?
> A. I don't recall that specifically, but again, we've had many conversations of many different –
> Q. Did Bill Fog[le]boch ever say to you words to the effect that I don't want you yelling at the employees?
> A. I don't – specifically I don't want you yelling at the employees, I don't recall ever hearing that.
>
> • • •
>
> Q. Do you recall any meeting where Bill Fog[le]boch told you that you were the root of many of the morale problems at Plastikos?
> A. I do not recall that.
> Q. Do you recall having a meeting with Bill Fog[le]boch where he told you that Dwane Belden had reported that you were screaming and yelling at him?
> A. I do not recall a meeting where that – those terms were ever used.
>
> • • •
>
> ... Do you see the – look at the fourth paragraph where it says I told him that this report would go in his file and to consider this as a verbal warning.
> Do you ever recall having that discussion with Bill Fog[le]boch about the incident described in Exhibit 1?
> A. I do not remember ever being given a verbal warning.
>
> • • •

Def. Ex. B, Aretz Dep. pp. 43; 50; Pl. Ex. J, Aretz Dep. pp. 40; 53. Plaintiff's claimed lack of

3

According to Mead, all three owners met with Plaintiff on several occasions and informed him that they did not approve of both his management style and/or treatment of employees. Def. Ex. D, Mead Dep. pp. 16-17. Mead claimed that while the Plaintiff promised to "do better," his management style did not improve. Def. Ex. D, Mead Dep. p. 17. Katen testified that towards the end of Plaintiff's employment, he heard several different stories and "grumblings" about Plaintiff and questioned Belden about it. Def. Ex. E, Katen Dep. pp. 39-40. Belden informed him that there were a lot of problems with Plaintiff's management style, including his use of vulgar language towards employees. Def. Ex. E, Katen Dep. pp. 38-39.

Katen testified that all three owners discussed terminating Plaintiff approximately twelve months prior to his actual termination date because they were unhappy with his management style. Def. Ex. E, Katen Dep. p. 25. Rather than terminating the Plaintiff, the owners decided to see if the Plaintiff's performance improved. Def. Ex. D, Mead Dep. 15; Def. Ex. G; Def. Ex. E, Katen Dep. pp. 31-32; 59-60. They placed him on informal probation, although the Plaintiff was not advised of that fact. Def. Ex. D, Mead Dep. 15; Def. Ex. G; Def. Ex. E, Katen Dep. pp. 31-32; 59-60.

Shortly before the Plaintiff's termination, the Plaintiff reported that an employee named Chris Stewart ("Stewart") had "been out of line with him." Def. Ex. C, Fogleboch Dep. p. 50. Fogleboch considered the Plaintiff's description of Stewart's behavior out of character for him because he considered Stewart to be a "very gentle, soft-spoken young man." Pl. Ex. O, Fogleboch Dep. pp. 50-51. On the heels of this incident, Fogleboch decided to interview ten employees in order to determine whether the problems with the Plaintiff's management style

---

recollection is insufficient to create a fact issue. See e.g., Kautz v. Met-Pro Corp., 412 F.3d 463, 475 (3rd Cir. 2005) (holding that plaintiff's lack of memory regarding criticism memorialized in a document was not a denial of the truth of the document and therefore did not establish pretext); Groff v. Continental Ins. Co., 741 F. Supp. 541, 548 (E.D.Pa. 1990) (holding that plaintiff's lack of memory or knowledge was insufficient to create a fact issue and therefore the evidence presented by defendant "remain[ed] uncontradicted"); International Poultry Processors v. Wampler Foods, Inc., 1999 WL 33456488 at *1 n.4 (E.D.Pa. 1999) (noting that, when plaintiff's representative testified that he did not recall submitting purchase order numbers, "lack of memory does not contradict [the defendant's] evidence that it received purchase order numbers").

persisted. Def. Ex. C, Fogleboch Dep. p. 20; Def. Ex. K pp. PLA0068; PLA0070. Broadly speaking, these interviews suggested to Fogleboch continued dissatisfaction on the part of employees with Plaintiff's management style. Def. Ex. K pp. PLA0068; PLA0070; Pl. Ex. O, Fogleboch Dep. pp. 96-97; Def. Ex. C, Fogleboch Dep. pp. 91-92. At the conclusion of the interview process, Fogleboch, Mead and Katen collectively made the decision to terminate Plaintiff. Pl. Ex. O, Fogleboch Dep. pp. 96-97; Def. Ex. D, Mead Dep. p. 38; Pl. Ex. P, Katen Dep. pp. 38-40; 61. He was officially terminated on March 31, 2006 and was advised at that time he was being terminated for "his inability to work with, and get along with employees under his direct supervision at Plastikos, Inc." Def. Ex. M.

Following Plaintiff's termination, Plastikos spread Plaintiff's duties among various individuals while interviewing candidates to replace him. Def. Ex. D, Mead Dep. p. 57. Robert Cooney ("Cooney"), a Plastikos employee, applied from within the company and was ultimately hired for the position. Def. Ex. D, Mead Dep. p. 57.

As a result of his termination, Plaintiff brought suit pursuant to the Age Discrimination in Employment Act of 1967, as amended, (the "ADEA"), 29 U.S.C. § 621 et seq. and the Pennsylvania Human Relations Act, (the "PHRA"), 43 P.S. § 951 et seq. Defendant has moved for summary judgment with respect to both claims.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

### III. DISCUSSION

Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA has a similar prohibition against age discrimination in employment. 43 P.S. § 955(a). "The same legal standard applies to a claim under the PHRA as applies to an ADEA claim." Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3rd Cir. 2006). For simplicity's sake, I will refer only to the ADEA.

Plaintiff's claims are analyzed pursuant to the familiar burden-shifting test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and further refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1983). Under McDonnell Douglas and its progeny, the plaintiff has the initial burden of establishing a prima facie case of discrimination, the substance of which will vary depending on the type of claim; if the plaintiff is successful, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment decision. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3rd Cir. 2000); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3rd Cir. 1997). If the employer proffers a legitimate, non-discriminatory reason for its action, the plaintiff must then demonstrate that the proffered reason was merely a pretext for unlawful discrimination. Goosby, 228 F.3d at 319, citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133 (2000); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3rd Cir. 1999).

For the purposes of this Motion, Defendant does not dispute that Plaintiff has made out a prima facie case of age discrimination related to his termination in March 2006. See Memorandum in Support p. 9. Defendant argues, however, that summary judgment is appropriate due to the Plaintiff's failure to raise a triable issue of fact with respect to pretext. I therefore confine my analysis accordingly.

In order to survive Defendant's summary judgment motion, I must determine whether Plaintiff has pointed to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3rd Cir. 2000); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331 (3rd Cir. 1995).

The plaintiff can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3rd Cir. 1992)). A plaintiff may not, however, "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3rd Cir. 1997) (quoting Fuentes, 32 F.2d at 765). In other words, the plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

To satisfy the second prong, the plaintiff must point to evidence "that proves ... discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. For example, an inference of pretext can be demonstrated under the second prong of Fuentes by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more favorably, or that the employer discriminated against other members of his protected class. Fuentes, 32 F.3d at 765.

Plaintiff argues that the Defendant's failure to have advised him of his probationary status, coupled with the fact that he was not informed of the "discipline" in his file relative to the shouting matches with Doliver and DeHaven, raises an inference of pretext. See Plaintiff's Brief in Opposition pp. 2; 6-7. I disagree. The failure to advise an employee of his probationary status is not circumstantially supportive of discriminatory animus. See e.g., Healey v. New York Life

7

Ins. Co., 860 F.2d 1209, 1216 (3rd Cir. 1988) ("managers are not compelled to convey their dissatisfaction to employees"), cert. denied, 490 U.S. 1098 (1989); Gutknecht v. Smithkline Beecham Clinical Laboratories, Inc., 950 F. Supp. 667, 676 (E.D.Pa. 1996) ("Lack of an official warning from defendant that plaintiff may be in risk of losing his job does not permit a jury to infer an inconsistency or implausibility of the nature sufficient to defeat the motion for summary judgment"), aff'd, 135 F.3d 764 (3rd Cir. 1997) (Table case); Tenthoff v. McGraw-Hill, Inc., 808 F. Supp. 2d 403, 406 (E.D.Pa.) (holding that while it would have been helpful for plaintiff to have such information, defendant was not required to tell employee it was dissatisfied with his work), aff'd, 981 F.2d 1248 (3rd Cir. 1992). Moreover, it is by no means clear whether the Plaintiff was "disciplined" in the classic sense, but, in any event, he was fully aware of the incidents and management's displeasure with him which precipitated the preparation of the disciplinary forms.

Plaintiff also argues that the Defendant's failure to have admonished or disciplined Doliver or DeHaven relative to the shouting incidents is reflective of discriminatory animus or pretext under a disparate treatment analysis. However, there is no evidence disparate treatment based on age as both men were considerably older than the Plaintiff. Def. Ex. G, DeHaven Dep. p. 6; Def. Ex. H. The fact that the Plaintiff disagrees with management's perception as to who was at fault, or for that matter, the manner in which they handled the incidents, is irrelevant to a pretext analysis.

The Plaintiff suggests that the lack of any documentation reflecting that he was disciplined during the twelve month period preceding his termination is relevant and probative in the pretext calculus. Defendant responds to this suggestion as follows:

> Plaintiff harps on the absence of any disciplinary documents in plaintiff's personnel file following the issuance of several disciplinary notices early in plaintiff's two-year tenure. Similarly, plaintiff complains that he was not informed that he was on "probation." Plaintiff's arguments are contrived. The fact that plaintiff was not "disciplined" during the latter stages of his employment does not tend to show pretext in any respect, since plaintiff was not fired for any reason that could possibly have been improved through discipline. Instead, the undisputed evidence plainly demonstrates that plaintiff was roundly disliked by the people he managed, and plaintiff cannot explain how he might have been disciplined in a manner that would have made him more likeable. Plaintiff's subordinates unanimously took issue with his

8

management style. That simply is not a disciplinary issue. It is a matter of plaintiff having been an ineffective manager. Plastikos' owners were free to make their own judgment as to whether they <u>wanted</u> a manager who was <u>disliked</u>, or whether they <u>wanted</u> a manager who was liked by his subordinates. Plastikos's owners, in their business and personal judgments, chose the latter.

<u>See</u> Defendant's Reply Memorandum [Doc. No. 24] p. 3 (emphasis in original). I find the Defendant's position on this point well taken.

In a further effort to establish pretext, Plaintiff contends that Fogleboch's investigation was deficient in that, among other things, he failed to pin down precisely when various incidents described by some of the employees occurred. Fogleboch testified that based on his interviews with various employees, as memorialized in Defendant's Exhibit K, he reached the conclusion that serious problems persisted with respect to the Plaintiff's management style which required his dismissal. Fogleboch was questioned concerning his decision to terminate the Plaintiff at his deposition and gave the following responses:

• • •

Q. Did you have any reservations about terminating Mr. Aretz at that time?

A. I always have reservations about terminating an individual. It's the hardest thing – one of the hardest things to do when you're in business is to fire somebody, because you know you're disrupting their life, their family, so on and so forth, but if you're not able to fire somebody, then you don't belong in business.

Q. You have no disagreement from me that it's a difficult thing to have to do. Beyond those sort of general reservations about firing an individual, did you have any other reservations about firing Pete Aretz?

A. No. Based on the information that I received from the employees and based on the things that I had been told, he needed to go. He did not manage people properly. He did everything he could to keep these things from me and he needed to go away.

• • •

Q. I'm not asking if you were aware. What I'm asking is when these incidents actually occurred, if all of these incidents had occurred early in Mr. Aretz's tenure and you had discussions with him, as we've looked at other things, throughout his tenure and all of these incidents occurred prior to your discussions with him, then would you have considered Mr. Aretz's performance in managing people to have been improving?

9

> A. Well, if these all happened prior to that and then there were no other incidents until the Chris Stewart, I would say, yes, his performance was improving or his managerial skills were improving. But based on the things that I told you that I had conversations with him that aren't documented about his managerial things, and, then, of course, the interviews that I had with the people, they weren't improving.

• • •

See Def. Ex. A (Reply Brief), Fogleboch Dep. pp. 57; 95. I find that the failure of Fogleboch to have provided dates for every specific incident referenced by all the employees is immaterial.[2] His testimony, in context, fully supports Fogleboch's claims that it was his perception that problems had been hidden from him by the Plaintiff and that his managerial style had not improved.

Finally, Plaintiff points to various comments made by various members of the management team as reflective of age-based animus. For example, the Plaintiff testified as follows concerning a comment made by Fogleboch:

> Q. What statements did he make about your age?
>
> A. I recall a comment made when I had a sore back and I don't know if he said you're not a spring chicken anymore, something to that effect. I am not quoting him.
>
> Q. Do you remember exactly what he said?
>
> A. Not exactly, no.
>
> Q. Do you remember when he said that to you?
>
> A. I don't recall the date.
>
> Q. Do you remember exactly how the subject came up? Did you say something to him first that he responded to?
>
> A. I recall having a sore back, let him know about that, and something to that effect, that comment came up.
>
> Q. Did he mention anything about whether at his age he gets a sore back?

---

[2] I do note, parenthetically, that he did supply a date, February 10, 2006, relative to an incident wherein Matthew Mead complained that the Plaintiff told him he had a "Dago Attitude." Def. Ex. K.

10

> A. I don't recall.
>
> Q. Do you remember when that comment was in your employment? Whether it was towards the beginning, the middle or the end, anything about when it was?
>
> A. I don't remember when it was.

See Def. Ex. E, Aretz Dep. pp. 19-20. No reasonable jury could conclude that Fogleboch's "spring chicken" comment, in the context in which it was used, was reflective of discriminatory animus.

Plaintiff also points to a remark made by Mead to the effect it became difficult to "keep up" with technological advances as a person gets older. See Plaintiff's Brief p. 3. The actual exchange makes it clear that Mead was referring to himself rather than the Plaintiff. Plaintiff testified that:

> Q. What about any of that has to do with your age at least in your mind?
>
> A. There were many references about as he would get older he couldn't do certain things, and I took that implying that I wasn't going to be able to do things as well many times, many case through conversation.
>
> Q. So he was talking to you about the things he couldn't do anymore?
>
> A. Yes.
>
> Q. What kind of things did he say?
>
> A. Keeping up with technology.
>
> Q. So he indicated to you that he had a hard time keeping up with technology?
>
> A. Yes.

See Def. Ex. E, Aretz Dep. pp. 24-25. Nor does the fact that Katen allegedly informed the Plaintiff that it was his intention to turn the company over to his sons and that the other owners were inclined to do the same, reflect a discriminatory animus. See e.g., Robinson v. City of Pittsburgh, 120 F.3d 1286, 1306 (3rd Cir. 1997) (affirming district court's ruling that evidence of "nepotism and favoritism" did "not give rise to a reasonable inference of discrimination"), overruled on other grounds by Burlington, Northern & Santa Fe Railway Co. v. White, 548 U.S.

53 (2006); cf. Pellegrino v. McMillen Lumber Products Corp., 16 F. Supp. 2d 574, 585 (W.D.Pa. 1996) (holding that "nepotism does not provide a cause of action under Title VII").

For the foregoing reasons, I conclude that the Plaintiff has failed to raise a triable issue of fact so as to preclude the granting of summary judgment.

### IV. Conclusion

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER J. ARETZ,                )
                               )
        Plaintiff,             )
                               )
            v.                 )   Civil Action No. 07-239 Erie
                               )
PLASTIKOS, INC.,               )
                               )
        Defendant.             )

## ORDER

AND NOW, this 6th day of March, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 13] is GRANTED. JUDGMENT is hereby entered in favor of the Defendant, Plastikos, Inc., and against the Plaintiff, Peter J. Aretz.

The clerk is hereby directed to mark the case closed.

                                              s/ Sean J. McLaughlin
                                              United States District Judge

cm: All parties of record.